ADELBERT T. TAPPAN

*v.*

WILLIAM F. DAYTON and ANNA E. DAYTON, administrator and administratrix of the estate of Jonathan Dayton, deceased.

1. Notice of an administrator's sale of land, in virtue of an order of an orphans court, for the payment of debts, published in a German newspaper, under the requirements of the supplement to the act relative to sales of land under a public statute or in virtue of any judicial proceeding, which was approved March 16th, 1891 (*P. L. p. 161*), must be in the English language.

2. Where the time appointed for such a sale was the 10th day of February, and the last insertion of the notice of sale, in one of the newspapers selected for its publication, was on the 2d day of February, it is held that the sale was illegal because of the non-compliance with the requirement of the statute (*P. L. 1887 p. 28*), which provides that the notice shall be published four weeks successively, once a week, next preceding the time appointed for the sale.

---

On appeal from an order of the Middlesex county orphans court confirming the sale of lands for the payment of debts.

*Mr. Alan H. Strong,* for the appellant.

*Mr. Silas D. Grimstead,* for the respondent.

THE ORDINARY.

This appeal is from an order of the Middlesex county orphans count which confirms the sale of land belonging to the estate of Jonathan Dayton, deceased, by the administrators of that estate, to pay debts, at which sale the appellant was the purchaser.  No

Tappan v. Dayton.

objection is made to the proceedings in the orphans court by
which the sale was authorized. The illegality suggested rests
entirely upon alleged irregularities in the advertisements of the
notice of sale. The law which regulates those advertisements is
found in the supplement to the statute entitled "An act relative
to sales of land under a public statute or in virtue of any ju-
dicial proceedings," which was approved March 17th, 1887 (*P.
L. p. 28*), and provides, among other things, that where an ad-
ministrator shall be authorized by public statute or the direction
of a court of competent jurisdiction to make sale of lands, he
shall give notice by public advertisements, signed by himself,
and set up at five or more public places in the county, one
whereof shall be in the township, ward or city where the real
estate is situate, at least four weeks next before the time of sale,
and shall likewise cause the notice to be published in two news-
papers printed and published in the county in which the land is
situate, of which one shall be a newspaper printed and published
at the county seat &c., for at least four weeks successively, once
a week, next preceding the time appointed for selling the same,
and in the further supplement to the same act, which was ap-
proved March 16th, 1891 (*P. L. p. 161*), and enacts—

"That in all counties in this state wherein, at the county seat thereof, there is
now published in the German language a paper which has been or may be
designated by law to publish the laws of this state, it shall be the duty of the
officer having charge of the sale of real estate, to select and publish all adver-
tisements of sales and adjournments thereof, in one such paper."

The first objection urged is that when the sale in question took
place there was a paper in Middlesex county published in the
German language, answering the description in the supplement
last referred to, in which notice of the sale was advertised in
English, not in the German language; the insistment being that
because of the publication in English there was a fatal departure
from the requirement of the law.

It is observed that the statutes under which the publication
was made have for their object, as indicated in their titles, sales
of land under public statute or in virtue of judicial proceedings.

Tappan *v.* Dayton.

It is also noted that the law of 1891, which requires publication in a German paper, is silent as to the language in which the publication in it shall be made. The sale in question was in virtue of a judicial proceeding in the orphans court, and the publication of notice of that sale is part of a judicial proceeding. It is the public proclamation of the court's officer or agent, in obedience to the court's order. When the sale is made it must be reported to the court (*Rev. p. 768 § 76*) and confirmed by that tribunal before conveyance is made to the purchaser. In that confirmation the fullness and fairness of the terms of the notice of the sale are considered as well as the publication of that notice, and, in order that the court may know those terms, the notice itself must be presented for judicial inspection and review, and it becomes a part of the court's proceedings.

By the seventeenth section of the act respecting amendments and jeofails, passed November 21st, 1794 (*Rev. p. 12*), all proceedings whatever in every court of law or equity in this state are required to be in the English tongue and language and in no other tongue or language.

The precise question suggested by the objection is, whether the act of 1891, from its requirement that notice of sale shall be advertised in a newspaper published in the German language, so implies that such notice shall be in the German language, as to repeal, *pro tanto*, the seventeenth section of the statute respecting amendments and jeofails. That section has existed upon our statute-book for nearly one hundred years, and during all that time the records of our courts have uniformly been in the English language, intelligible to all persons who speak and read the language of our country. Was it the purpose of the legislature to single out one foreign language and give it a place in our judicial proceedings? In the case of *North Baptist Church v. Orange, 25 Vr. 111*, the supreme court, in construing a statute which provides that notice of the time and place when and where a proposed ordinance, authorizing a contemplated municipal improvement, will be considered, shall be published in all the newspapers within the municipality, one of which, at the enactment of the law, and continuing thence to the time of the

notice, was, in fact, printed in the German language, held that the implication was that the notice published in the German paper was to be in the German language. Its reasoning is as follows: "The notice of the time and place when the present ordinance would be considered was printed in this paper, as it was in the other two papers, in the English language. This, we think, was a mistake. The primary meaning of the word 'publish' is to make known. The medium through which intelligence is communicated in a German newspaper is the German language. The object to be attained by including such papers in the class of publications is to bring knowledge home to a body of readers by whom, as a rule, the English language is not readily or not at all legible. A notice contained in a German paper in language other than the German is not published but only printed."

Without stopping to question the cogency of this reasoning, it is observed that the case so decided, materially differs from the one now under discussion. In it the implication or inference was not combated by an existing statute which defined the policy of our law upon a vitally important subject for almost a century. In the case under discussion, the meaning of the statute of 1891 must be determined in view of such a statute and the policy it establishes. Was it the intention of the legislature that the act of 1891 should be accorded a meaning that would in any particular supersede the law of 1794?

One rule of construction applicable here is stated in *Sedgw. Stat. Const. 106*, as follows:

"Laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the same subject. And it is, therefore, but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable; and hence a repeal by implication is not favored. On the contrary, the courts are bound to uphold the prior law, if the two acts may well subsist together."

This rule has been repeatedly recognized and applied by our courts. *Britton* v. *Blake, 6 Vr. 208; S. C., 7 Vr. 442; State* v. *Commissioners of Railroad Taxation, 8 Vr. 228; Landis* v.

*Landis,* 10 *Vr.* 274; *Craft* v. *Jachetti,* 18 *Vr.* 207; *Nichols* v. *Disner,* 5 *Dutch.* 293; *Plum* v. *Lugar,* 20 *Vr.* 557.

Another rule, also applicable, is this: Where no repealing words are inserted in the later of two apparently inconsistent statutes, a strong presumption arises that no repeal was intended or it would have been expressed. *McNeeley* v. *Woodruff,* 1 *Gr.* 352, 356; *Henry* v. *City of Camden,* 13 *Vr.* 335; *Plum* v. *Lugar, supra.*

The act of 1891 does not contain a repealing clause, and, in face of the rules stated, it appears to me to be impossible to give it the construction contended for. The disfavor of repeals by implication or inference and the presumption against repeal, in absence of a repealing clause, I think outweigh the implication here invoked. The law of 1891 is silent as to the language in which the notice of sale shall be published, and does not forbid publication in English, hence no violence is done it to hold that it contemplates publication in that language. To imply that publication in the German language was intended is not a necessary implication. Holding that the publication is to be in English reasonably reconciles and harmonizes the provisions of both statutes. It may well be that the legislative intent in the passage of the act of 1891 was to place notices of sales where they would be seen by a notably industrious and saving people, who, although able to read and understand English, prefer habitually to read a paper in their native tongue and look to it for information. The first objection is not sustained.

The next objection rests upon this state of facts: That the sale was advertised for the 10th of February, 1893; that on that day it was adjourned to the 21st of February; that notice of the sale was published in two papers, in one of which, " The New Brunswick Home News," it was inserted on the 5th, 12th, 19th and 26th of January and the 2d of February, but not again before the day appointed for the sale, and that the adjournment of the sale was inserted in the same paper on the 11th and 18th days of February. The omission to advertise the notice of sale in that paper after the 2d of February is insisted upon as a fatal irregularity. I think that this objection is well taken.

Tappan *v.* Dayton.

As has been seen, the statute requires that the notice of sale shall be published for at least four weeks successively, once a week, *next preceding the time appointed for the sale.* The failure to publish the notice between February 2d and February 10th, a period of eight days immediately preceding the time appointed for the sale, shows an inexcusable non-compliance with the statute in that for more than a week next preceding the time appointed for the sale notice of it was not published in that paper. The purpose of the requirement that the publication should fit closely upon the sale is obviously to keep freshly in the public mind the pendency of the sale, and the mischief of the omission to publish within the last week may be two-fold, in permitting the sale to be lost sight of and, possibly, in impressing intending purchasers with the belief that it has been abandoned. However this may be, the courts hold that strict compliance with the requirements of the statute is essential to the validity of the sale. *Parsons* v. *Lanning, 12 C. E. Gr. 70; State* v. *Elizabeth, 12 Vr. 518.*

The order appealed from will be reversed, but without costs, because the objections here urged were not presented to the orphans court.