54 111
54 438
54 111
51e 262

THE STATE, THE NORTH BAPTIST CHURCH, PROSECUTOR,
v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF ORANGE.

1. A promise made by a citizen to pay a part of the expense of opening a street is not opposed to public policy, and an ordinance passed by a common council to open such street will not upon that ground be set aside.
2. When a notice is required by a statute to be published in a newspaper printed in German, such notice must be printed in that paper in the German language; but when a statute or ordinance is required to be published in such paper it must, in default of a legislative direction to the contrary, be printed in English.

On *certiorari.*

This writ brings up an ordinance to open a street in the city of Orange, together with all the proceedings touching the same.

Argued at June Term, 1891, before Justices DEPUE, DIXON and REED.

For the prosecutor, *Colie & Titsworth* and *Joseph D. Bedle.*

For the defendants, *Charles F. Lighthipe*

The opinion of the court was delivered by

REED, J.    The objection most strenuously pressed against this ordinance is that its passage was not a legitimate exercise of the power to take land for public use.

It is first insisted that the land of the prosecutor is not taken for the benefit of the public, but to subserve the interests of private individuals.

It is secondly insisted that the judgment of the body which was to decide upon the question whether the street should be laid across the land of the prosecutor was improperly influenced by an offer of private persons to pay a portion of the expense of the improvement.

In respect to the first of these points, it is observable that it is no part of our functions to decide whether the scheme adopted in this instance was a wise one.    We have no power to try the question whether the advantages that would accrue to the public by reason of this improvement would be greater or less than the burden which it would impose, nor whether the degree of public benefit is so small that it does not justify the taking of land against the will of its owner.

These questions have been confided by the legislature in the common council.    If it should appear that there could not inure to the public any advantage whatever, and that the scheme is designed solely for the benefit of private individuals,

the court could interpose.in favor of the landowner whose property is menaced.   But when it is perceived that there is a degree of public benefit likely to spring out of the enterprise, all questions of policy in executing it are devolved upon .the common council.   To employ the language of the Chief Justice in the case of *The Tide Water Company* v. *Coster*, 3 *C. E. Gr.* 518 : " If the public interest be involved in any substantial extent, and if the project contemplated can in any fair sense be said to be promotive of the welfare or convenience of the community, the legislative adoption of such project is a determination of the question from which there is no appeal."

This rule is true, whether the scheme is adopted by the legislature directly or by a municipal body by virtue of a delegated authority.   *Dill. Mun. Corp.*, § 95.

It is evident that the street now under consideration is calculated to enhance the convenience of a large portion of the public of Orange.

The evidence taken in the cause shows the location of the already existing streets, the relative populousness of the neighboring districts, and the conveniences of passage from one point of the neighborhood to another.   This, together with the opinions of a number of citizens, display unmistakably the public character of the proposed street.

Indeed, in the absence of any testimony, this presumption would be almost, if not quite, conclusive.   Says Judge Dillon : " Municipal uses proper are public uses.   Highways are conceded to be, and manifestly are, matters of public concern ; and hence, the condemnation of property for streets, alleys and public ways is undeniably for a public use."   There is no substance in the point taken, that the land over which the street runs is taken for a private, and not for a public, purpose.

The next proposition involves the effect of an offer made by one or more private individuals to pay a portion of the expense of laying out the street.

This offer was made by a Mr. Barber, whose property will obviously be much benefited by the opening of the new street.

He appeared before the common council and stated that he would give $1,000 above his assessment for special benefits.

It is contended that this offer to contribute to the expenses of the improvement was calculated to influence the judgment of the common council in its determination whether the street should or should not be opened.

It is further insisted that this influence is inimical to a sound rule of public policy.

There is a line of cases decided by the courts of the State of New Hampshire, in which this view seems to receive support. *Dudley* v. *Cilley*, 5 *N. H.* 558; *Dudley* v. *Butler*, 10 *Id.* 281; *Smith* v. *Conway*, 17 *Id.* 586; *Guernsey* v. *Edwards*, 26 *Id.* 224. Chief Justice Parsons, in the early case of *Commonwealth* v. *Cambridge*, 7 *Mass.* 158, seems also to have entertained a similar view.

A different view is taken, concerning the effect of such an offer, in other cases. *Patridge* v. *Ballard*, 2 *Me.* 50; *Crockett* v. *Boston*, 5 *Cush.* 182.

The opinion of Chief Justice Shaw, in *Copeland* v. *Packard*, 16 *Pick.* 217, is in accord with the doctrine announced in the last-named cases.

Then, there are a number of cases holding that gifts of land or subscriptions of money for the location of public buildings in a certain place are not inimical to public policy. These cases are collected in the opinion in *Pepin Co.* v. *Prindle*, 61 *Wis.* 301, 311.

I am unable to perceive how the offer made in this case infringes any rule of public policy. It is observable that the offer holds out no personal advantage to any member of the common council. Nor does it, as in the case of *Smith* v. *Applegate*, 3 *Zab.* 352, offer an inducement to a party to the proceedings to fasten a burden upon the public after a reviewing body had declared it unnecessary. The offer, in this instance, operated to make the conditions under which the judgment of the common council was to be exercised, as to the advisability of opening the street, more favorable to the public interests. It is almost always necessary, in deciding upon the propriety

of a public improvement, to consider, on the one hand, the advantages which are likely to accrue to the public from it, and, on the other hand, the expense and burden which will be imposed by reason of it. These considerations lie at the root of the question whether it shall be done, and, if done, how it shall be done. Where the amount of expense is so great that the undertaking is dropped, a public gain is lost by reason of this unfortunate obstacle. If the expense can, in any way, be reduced so that the balance, after weighing these counter-considerations, is in favor of the benefit over the burden, then the public reaps the advantage.

It seems to follow that an offer to diminish the expense which would fall upon the public is a gain and not a loss to the public. It is, of course, apparent, that if the public improvement would have been executed without the intervention of the offer, the offer diminishes the amount which would otherwise have to be raised by tax. In fact, the offer merely introduces a new factor in the conditions under which the common council is to consider the propriety of opening the proposed street. But it leaves that body, untrammeled by any bribe, directly or indirectly, in view of all the conditions and with a regard to the best interests of the public, to exercise that discretion with which it is invested by the legislature.

It may be observed that, if it should be held that an offer to contribute money is opposed to public policy, it must follow that a donation of land must stand upon the same footing.

The acceptance of public highways which have been dedicated would come under the ban of such a doctrine.

The very same argument could be employed against it, namely, that if it had been necessary to condemn the route and assess the cost upon neighboring owners and upon the public, the street might not have been opened and so the burden of maintaining it would not have been imposed upon the public.

My conclusion is that, upon the grounds mentioned, there exists no valid objection to the proceedings.

There are, however, irregularities which we are constrained to regard as fatal to the present ordinance. These irregularities are to be found in the manner in which the notice of the proposed improvement, as well as the manner in which the ordinance, after its passage, were printed.

The charter (*Pamph. L.* 1869, *p.* 212, § 61) requires that public notice of the contemplated improvement shall be given by publishing a copy of the proposed ordinance, and that the said notices shall state the time and place of the meeting of common council at which they will proceed to consider the said ordinance.

A supplement to the charter (*Pamph. L.* 1873, *p.* 461, § 5) requires that these notices shall be published in all three of the newspapers published at that time in the city of Orange. One of these papers was then, and still is, printed in the German language.

The notice of the time and place when the present ordinance would be considered was printed in this paper, as it was in the other two papers, in the English language.

This, we think, was a mistake. The primary meaning of the word publish is to make known. The medium through which intelligence is communicated in a German newspaper is the German language. The object to be attained by including such papers in the class of publications is to bring knowledge home to a body of readers by whom, as a rule, the English language is not readily or not at all legible. A notice contained in a German paper in a language other than the German is not published but only printed.

Again, the charter requires all ordinances, after their passage, to be published in the same three papers. This ordinance was published in a German translation only. I think this was also a mistake. There is a manifest distinction to be observed between the publication of a notice and the publication of an instrument or statute or ordinance.

A notice requires no particular collocation of words so long as it conveys a clear notion of its subject.

But a statute or ordinance has no legal existence except in the language in which it is passed.

No translation, however accurate, can be adopted in the place of its original text for the purposes of construction in a legal proceeding.

Until the legislature makes a provision for the printing of ordinances in German newspapers in translation, it is not per- ceived how they can be printed otherwise than *litera et verbis.* The publication of the translation may be regarded as a proper explanatory adjunct of the English copy, but cannot be accepted as a legal substitute for it.

This view of the manner in which an ordinance should be printed under these conditions applies in some degree to the notice also. As already set forth, the charter requires that as part of such notice a copy of the proposed ordinance shall be published. For the reasons already stated, this copy should appear in English.

The ordinance must be set aside.