WILLIAM L. BLACK, PROSECUTOR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ATLANTIC ET AL.

Argued February 16, 1910—Decided June 16, 1910.

1. Section 1 of "An act to provide for the permanent improvement of public roads in this state" (*Pamph. L.* 1905, *p.* 94) calls for the exercise by boards of chosen freeholders of a discretion based wholly upon the needs and benefits of their counties, and hence affords no authority for a resolution to improve a highway, on which a trolley line is operated, based upon a bargain and contract with such company by which the board obligates itself to improve such highway if the trolley company will bear a certain proportion of the expense.

2. Section 4 of the act of 1905, as amended in 1908 (*Pamph. L., p.* 561), authorizes the awarding of contracts for road improvements in any one year in excess of the amount raised for such purposes in that year, provided such excess be not greater than one-fifth of one per cent. of the ratables of the preceding year.

---

On *certiorari.*

Before Justices GARRISON, SWAYZE and PARKER.

For the prosecutor, *Thompson & Cole.*

For the board of chosen freeholders, *Higbee & Coulomb.*

For Bryant Reilly, *John J. Crandall.*

The opinion of the court was delivered by

GARRISON, J. The writ in this cause reviews the proceedings of the board of chosen freeholders of the county of Atlantic that culminated in a contract between said board and Bryant Reilly for the permanent improvement of a public road known as the Shore road, which runs from Absecon to Somers Point, in the county of Atlantic.

The statutory authority relied upon for the validity of the proceeding and contract in question is an act entitled "An act to provide for the permanent improvement of public roads in this state." *Pamph. L.* 1905, *p.* 94.

The scheme of this act is that boards of chosen freeholders may, upon taking the action prescribed by the statute, improve and assume the maintenance of roads within the county to the exclusion of the local authorities of the several municipal divisions through which such roads may run. The amount of such contracts that may lawfully be awarded in any one year is prescribed in section 4 of the act, which, as amended in 1908 (*Pamph. L., p.* 561), reads as follows:

"The estimated amount of all contracts for road improvements awarded in any one year by the board of chosen freeholders together with the estimated cost of repairs of roads already constructed shall not exceed (in excess of the amount which any county may raise in any one year) one-fifth of one per centum of the ratables of the county as reported to the state comptroller for the preceding year exclusive of the state appropriation for road purposes apportioned to any county."

One of the controversies in the present case is over the meaning and effect of the parenthesis in this section. If, as the prosecutor contends, the effect of these words is to authorize awards in excess of the amount otherwise already raised for the purpose, provided such excess be not more than the percentage fixed by the section, the present award was unauthorized; whereas, if its meaning be, as the defendants con-

tend, that the awards for any one year may exceed by the prescribed percentage the amount the county might have raised, then the present award is not invalid on this ground. As aids to the proper interpretation of this section and especially of its parenthetical clause, we have the circumstance that the expression "in any one year" occurs both in the body of the section and also in the parenthesis, and hence should be given the same meaning in each; and also that the word "excess" in the parenthesis following as it does immediately after the word "exceed" should be taken to qualify or explain its meaning, the parenthesis being in effect in the nature of a *videlicet*. Giving affirmative effect to the language of the entire section thus interpreted it authorizes the awarding of contracts for road improvements in any one year in excess of the amount otherwise raised for such purposes in that year, the limit of such excess to be determined by the prescribed percentage of the ratables of the preceding year. "The amount which any county may raise in any one year," which was a contingency at the time the statute was enacted, was no longer a contingency at the time the statute was being operated under, for at that period the amount thus spoken of is regarded by the statutory provision as a determinate sum the right to exceed which by a prescribed limit is the expressed purpose of the section. The opposite contention, viz., that "may raise" means the abstract or utmost capacity to raise or rather to have raised, is inconsistent with the language of the act and its avowed object. The manifest absurdity of attempting to confer upon counties a capacity in excess of their utmost capacity should not lightly be ascribed to the legislature when another purpose plainly appears in the language employed. Section 4, as we interpret it, when applied to the stipulated facts of the present case, renders the present award in excess of the amount available in the year 1907 for such purposes and is a sufficient ground for declaring invalid the proceedings on which the present contract was awarded in that year. The circumstance that the contract was not executed until 1910 does not avoid the effect of the statutory language. Moreover the delay in the execution

of the contract from September, 1909, when it was awarded, until the 10th of January, 1910, is in direct violation of the statutory requirement that such "contract must be executed * * * within thirty days from the awarding of the contract." The violation of this provision by the contracting parties, if not fatal to their contract, at least should not redound to their advantage.

There is another respect in which the proceeding under review does not follow the statutory prescription. Under section 1 of the act of 1905 the board of chosen freeholders is to exercise its discretion in regard to the permanent improvement of roads whose future maintenance will thereupon become a public burden on the county; and in giving preference to one road over others a determination must be made by the freeholders that is expressly required by the statute to be based upon the relative importance of the roads and the distribution of the benefits of the statute to all parts of the county. Whether the discretion thus exercised be regarded as legislative or as *quasi*-judicial in character the attitude of the freeholders and their consequent action must conform to the statutory source of their authority. The entire scheme being statutory, the only relations that can legitimately arise therefrom must themselves be statutory relations unless otherwise provided by the statute. In direct contravention, however, of this plain postulate the action of the freeholders in the present case, from its inception to its culmination, was purely contractual. In place of the determination contemplated by the statute the board of freeholders entered into a contract with a trolley company that already occupies the highway, with respect to which it has subsisting and unperformed duties, and by force of such contract the freeholders obligated themselves to take over and improve the highway if the trolley company on its part would obligate itself to pay a certain proportion of the expense of so doing. The action of the freeholders in binding themselves by contract as the result of a bargain of this sort finds no authority in the statute, and if it is to be sanctioned the entire scheme and equity of the statute go for nothing.

Under such a system of bargaining, considerations not contemplated by the act are permitted to take the place of those that are expressly enjoined upon the freeholders as public trustees to the manifest detriment of their *cestui que trust.* What chances of preferment, for instance, have highways on which there is no trolley road to bargain with? Indeed the fact that a highway already has a trolley line thereon would seem to militate against its preferment, unless the improvement of the roads of a county is to be ordered in inverse ratio to their claims to such preferment. The tripartite contract between the freeholders, the trolley company and the municipalities through which the highway runs is not only not authorized by the statute, but is furthermore opposed to the statutory scheme which is based upon the establishment of statutory relations that are directly enforceable by *mandamus* and not upon the creation of merely contractual relations that are practically unenforceable and at best lead only to litigation over the recovery of damages. We are not suggesting that the trolley agreement was a bribe, or that the determination of the freeholders was invalidated by corrupt or untoward influences, but simply that it was not in conformity to the statute. The case of *North Baptist Church* v. *Orange,* 25 *Vroom* 111, therefore does not apply; and there is no case, I suppose, that holds that a statutory proceeding is valid when unsupported by the statutory authority on which it must rest.

One result of this departure by the freeholders from the statute is that the approval of the state road commissioner was not obtained as required by the statute, and this is but one of the many complications that must inevitably arise from the irregular course pursued in this case. The plain duty of the freeholders was to follow the statute, not to seek to improve upon it by the substitution of a totally different scheme that was incompatible with many of the essential requirements of the act. Other questions that were argued need not be considered in view of the conclusion we have reached.

The proceedings brought up by this writ and the contract awarded to Bryant Reilly are set aside.