878 A.2d 38 (2005)
379 N.J. Super. 358
MOUNT LAUREL TOWNSHIP, Plaintiff-Appellant/Cross-Respondent,
v.
MIPRO HOMES, L.L.C., Defendant-Respondent/Cross-Appellant, and
Lorraine C. Elbon and 190 Elbo, L.L.C., Defendants, and
Builders League of South Jersey, Inc., Defendant-Intervenor-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 26, 2005.
Decided August 2, 2005.
*40 Michael L. Mouber, Marlton, argued the cause for appellant in A-6766-02T1 and appellant/cross-respondent in A-3201-03T1.
Jeffrey I. Baron, Voorhees, argued the cause for Mipro Homes, respondent in A-6766-02T1 and respondent/cross-appellant in A-3201-03T1 (Baron & Riefberg, attorneys; Mr. Baron, of counsel; Barbara E. Riefberg, on the brief).
Robert M. Washburn, Cherry Hill, argued the cause for respondent Builders League of South Jersey, Inc. (Flaster/Greenberg, attorneys; Mr. Washburn, of counsel; Richard J. Hoff, Jr., on the brief).
Jeffrey N. Rabin, Senior Assistant County Solicitor, argued the cause for amicus curiae Board of Chosen Freeholders of the County of Burlington in A-6766-02T1 (Evan H.C. Crook, Burlington County Solicitor, attorney; Mr. Rabin, on the brief).
Thomas W. Dunn, Montvale, argued the cause for amicus curiae New Jersey State League of Municipalities in A-6766-02T1 (William John Kearns, Jr., attorney; Mr. Dunn, on the brief).
Peter C. Harvey, Attorney General, attorney for amicus curiae State of New Jersey in A-6766-02T1 (Nancy Kaplen, Assistant Attorney General, of counsel; Rachel Horowitz, Deputy Attorney General, on the brief).
Before Judges SKILLMAN, GRALL and GILROY.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether evidence that a municipality's motive in selecting properties for open space acquisition is to slow down residential development makes use of the eminent domain power for this purpose improper. We conclude that a municipality's acquisition for open space of properties on which residential development is planned constitutes a proper use of the eminent domain power.
Plaintiff Mount Laurel Township is a rapidly developing municipality. Between 1960 and 1999, Mount Laurel's population grew from 5,249 to approximately 40,000, and it continues to grow at a rate of approximately 1,000 people per year. This rapid growth has created a strain on Mount Laurel's schools, roadways, police and fire departments and other municipal services.
For a substantial period of time, Mount Laurel was a party to exclusionary zoning litigation. In fact, Mount Laurel was the defendant in the leading early exclusionary *41 zoning cases in this State, Southern Burlington County NAACP v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713, cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) and Southern Burlington County NAACP v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983). A 1985 order in that litigation resulted in a large section of Mount Laurel being placed in an "overlay" zone, in which a developer was permitted to construct five residential units per acre, provided 15% of the units were set aside for low- and moderate-income housing. This zoning, as well as Mount Laurel's limited financial resources, prevented the municipality from preserving a significant amount of land for open space from the mid 1980s to the late 1990s.
In 1997, Mount Laurel repealed the zoning ordinance establishing the overlay zone, as allowed under an "order of repose" entered in the exclusionary zoning litigation. At the same time, Mount Laurel's governing body decided to take action to slow down the rate of the municipality's growth and to preserve additional land for open space. Initially, the governing body planned to pursue this objective by rezoning substantial areas for less intensive uses and then seeking to acquire selected parcels for open space. However, after the municipality's counsel advised that this approach could pose legal problems, the governing body decided instead to pursue creation of additional open space by a public referendum authorizing the raising of additional municipal revenue for this purpose and applying for money available for acquisition of land for open space under the Green Acres program.
In July 1998, Mount Laurel's governing body adopted Ordinance 1998-6, which placed a referendum on the November 1998 ballot for a proposed tax increase of two cents per one hundred dollars of assessed value for acquisition of open space. The interpretative statement accompanying the referendum indicated that an owner of property assessed at $125,000 would pay an additional $25 in property taxes per year for the next twenty years, for a total of $500, for this open space acquisition program. The statement also indicated that the fund created by this additional tax assessment would be "used exclusively for the acquisition of land for open space preservation, farmland preservation, historic preservation, parks and recreation." In campaigning for passage of this referendum, the Mayor of Mount Laurel and other public officials pointed out that the proposed open space acquisition program would not only preserve additional open space for passive and active recreational uses but also relieve residents of the tax burdens that would result from residential development. The referendum passed by an overwhelming vote.
The same November 1998 ballot containing this municipal referendum question also contained Burlington County and State ballot questions seeking authorization for the expenditure of additional public funds for acquisition of open space. The County question sought voter authorization for a County tax increase of two cents per one hundred dollars of assessed value (in addition to the municipal tax increase of the same amount) for open space acquisition. See Land Trust Alliance, Voters Invest in Parks and Open Space: 1998 Referenda Results at 5 (1999). The State question sought voter approval of a constitutional amendment dedicating $98 million annually for thirty years from the existing State sales and use tax to "finance open space, farmland, and historic preservation." Manual of the Legislature of New Jersey at 922 (Skinder-Strauss Assocs.1999).
In urging approval of both the municipal and State ballot questions, the Mayor of Mount Laurel stated in a letter to voters:

*42 One of the advantages of the State referendum is that it creates a special preference category for municipalities that have passed an open space referendum to get resources quicker. In other words, if you vote "yes" on ... the municipal referendum for open space, and the State question also passes statewide, Mount Laurel will be in a special category whereby the Township will be able to obtain State funding for open spaces more quickly and on a higher priority basis.
Both the State and County ballot questions authorizing additional expenditures of public funds for open space acquisition were approved. Land Trust Alliance, supra, at 5.
After approval of these referenda, the Mount Laurel governing body undertook to identify all remaining open space in the municipality to determine which parcels would be appropriate for acquisition and could qualify for Green Acres funding. The governing body retained a consultant, Bay Pointe Engineering, to assist in this process.
With the consultant's assistance, Mount Laurel adopted an Open Space Recreation Plan as required by the regulations governing the Green Acres program, N.J.A.C. 7:36-6.4. Mount Laurel's plan envisions both active and passive recreational uses in the open space it plans to acquire. These uses include a proposed bicycle/pedestrian path that will provide links between the municipality's parks, schools and other major public and private facilities. The plan's goal is to create a "community of place" within Mount Laurel:
[T]he township is trying to address the need to provide a community of place, or a defined identity that characterizes the township. With the absence of a village core, the township consists of pockets of housing developments and commercial and industrial developments along the major highways.
The township is now attempting to provide open spaces to soften the density of development, to provide relief from the stresses of suburban living, and to provide a unified land use pattern that links together all parts of the township. This community of place will be achieved by providing open spaces, and then linking them together with a pedestrian or multi-purpose path system. The path systems can be located along County and township streets, through woods and fields and along stream corridors to provide continuous linkage. Some open space parcels may be used for recreation, while other parcels may be used for passive open space and support of environmentally sensitive areas. The pedestrian linkage between homes and nearby open spaces will be the major design element in creating a community of place.
In determining what land to acquire for open space, Mount Laurel assigns priority to the acquisition of large parcels zoned for residential development. The Mayor of Mount Laurel explained the reasons for this priority in her letter urging Mount Laurel residents to vote for the referendum authorizing the raising of additional revenue for acquisition of land for open space:
The first reason is that residentially zoned land is, generally speaking, less expensive than commercially zoned land. I say this even though all land in Mount Laurel is expensive. Secondly, all of us who are property owners in Mount Laurel benefit from an industrial/commercial base which pays very substantial taxes but which requires few services. Commercial property owners send no children to our schools and set out no trash for municipal collection. They remove *43 their own snow, clean their own parking lots and have a relatively low incidence of calling the Township for municipal services such as emergency rescue, police, etc.
On the other hand, if the Township acquires land upon which homes would otherwise be built, those homes, just like your home and mine, would put additional burdens on all of the Township's taxpayers. The costs for municipal services are always increasing  just like our own personal budgets. Educational costs for however many children each home would send to the school system over the entire time that those homes are standing is obviously a significant cost to all taxpayers for many years, perhaps indefinitely.
Defendant Mipro Homes, L.L.C. is the owner of a 16.3-acre parcel located in an area of Mount Laurel zoned for residential use, which is occupied by a single house. Mount Laurel initially did not include this parcel in the list of properties sought to be acquired for open space because Mipro's predecessor in title planned to construct an assisted living facility on the site that would have included units affordable to low- and moderate-income residents. However, Mipro contracted to purchase the site in the summer of 2001 for the purpose of building twenty-three single-family residences, priced between $400,000 and $450,000, and obtained preliminary subdivision approval for this development in June 2001. Title to the property was conveyed to Mipro on August 30, 2001.
When Mount Laurel's governing body became aware that the proposed use of the Mipro site had changed from an assisted living facility to a development for single-family residences, it decided to add the site to the list of parcels to be acquired under its open space acquisition program. On October 10, 2001, the Mount Laurel Township Manager sent a letter to Mipro which stated that its property had been "preliminarily listed as a potential parcel to be included in the Township Recreation and Open Space Plan." On October 15, 2001, the governing body adopted a resolution that added the Mipro site to its open space acquisition plan. On November 6, 2001, the residents of Mount Laurel approved another referendum authorizing an additional tax increase of two cents per one hundred dollars of assessed value for acquisition of open space, which assured adequate funding to acquire the Mipro site. On April 15, 2002, the governing body adopted an ordinance authorizing acquisition of the Mipro site.
On May 9, 2002, the Planning Board granted Mipro's application for final subdivision approval, which was memorialized by a resolution adopted on June 13, 2002.
After Mount Laurel was unable to obtain the Mipro site by voluntary acquisition, it brought this condemnation action on May 24, 2002, and filed a declaration of taking on May 31, 2002. During the twenty-two-day period between the grant of final subdivision approval and the filing of the declaration of taking, Mipro performed a significant amount of site preparation work on the site.
Mipro's answer to Mount Laurel's complaint asserted that the purpose of the condemnation action was to stop residential development and that this is an unlawful purpose. The trial court granted the Builder's League of South Jersey's motion to intervene in support of Mipro's position.
During the pendency of this action, the Planning Board adopted an amended master plan, which stated that the goals of the recreation and open space plan included acquisition of "the maximum amount of open space remaining in the township that can be achieved with sound use of financial resources" and reduction of traffic congestion *44 and costs of municipal services. The amended master plan also stated that "[s]ince Mount Laurel is urbanized throughout the entire township, all potential parcels are locationally suitable for permanent open space." In addition, the Commissioner of the Department of Environmental Protection (DEP) notified Mount Laurel by a letter dated August 1, 2002, that its application for a $400,000 matching grant for acquisition of the Mipro site had been approved.
The case was brought before the court by cross-motions for summary judgment supported by voluminous factual materials. In a written opinion, the trial court recognized that Mount Laurel had initiated proceedings to condemn Mipro's property "for a facially valid purpose, namely, the acquisition of Mipro's tract to be held in perpetuity as a passive open space." Nevertheless, the court concluded that Mount Laurel's "real purpose" in condemning Mipro's property "was to prevent yet another residential development in a township already under severe development pressure." The court stated that "the public purpose articulated for the taking of Mipro's property for passive open space was not based on a true public need but solely in response to the community's sentiment expressed at the polls, coupled with clear indications from township officials that the property be acquired to stop residential development." The court concluded that although Mount Laurel may use public money to prevent residential development and preserve open space by voluntary purchase from the owners, it may not resort to the power of eminent domain for these purposes:
There is nothing legally wrong with the chosen approach as long as the township purchases the property from a willing seller. The abuse of discretion and arbitrary, capricious and unreasonable action by the Township occurred when it abused the awesome power of eminent domain for a purpose not contemplated by, and indeed proscribed by, our Eminent Domain Law.... If the Township desires to continue to purchase property for open space, it may do so. Those purchases may only be made from willing sellers, not by resort to condemnation of tracts under development from private owners unwilling to give up their properties and vested approvals.
Accordingly, the trial court entered summary judgment dismissing Mount Laurel's action to condemn Mipro's property.
Mount Laurel filed a notice of appeal from the summary judgment. Thereafter, the trial court entered another order awarding Mipro $219,815.14 for counsel fees, costs and other expenses it incurred as a result of the condemnation action. Mount Laurel filed a separate notice of appeal from this order. In the second appeal, Mipro filed a notice of cross-appeal claiming that the trial court should have awarded additional damages resulting from the condemnation action. We now consolidate the appeals.
We conclude that a municipality has statutory authority to condemn property for open space; that a municipality may exercise this authority even though it does not presently have a plan to devote the property to active recreational uses; that the selection of properties for open space acquisition on which residential development is planned does not constitute an improper exercise of the eminent domain power; and that Mipro did not present evidence that could support a finding that Mount Laurel's decision to condemn its property constituted an abuse of the eminent domain power. Therefore, we reverse the judgment dismissing Mount Laurel's complaint as well as the order awarding Mipro counsel fees, costs and expenses *45 and remand the case for an order appointing condemnation commissioners.

I
Before discussing the primary issue presented by this appeal, we first address the Builders League's argument that Mount Laurel lacked legal authority to condemn Mipro's site for open space because the zone in which the property is located was not designated as open space in Mount Laurel's master plan.
Under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, a master plan must include a "land use plan element" that, among other things, shows "the existing and proposed location, extent and intensity of development of land to be used in the future for varying types of residential, commercial, industrial, agricultural, recreational, educational and other public and private purposes or combination of purposes." N.J.S.A. 40:55D-28(b)(2)(b). A master plan also may contain various optional elements, including "[a] conservation plan element providing for the preservation, conservation, and utilization of natural resources, including, to the extent appropriate, ... open space." N.J.S.A. 40:55D-28(b)(8).
The MLUL requires a zoning ordinance to be "substantially consistent with the land use plan element and the housing plan element of the master plan" unless the governing body adopts a zoning ordinance inconsistent with those elements "by affirmative vote of a majority of the full authorized membership of the governing body, with the reasons of the governing body for so acting set forth in a resolution and recorded in its minutes." N.J.S.A. 40:55D-62(a). However, a zoning ordinance is not required to be substantially consistent with the conservation element of the master plan.
In any event, this case involves a municipality's exercise of the eminent domain power rather than zoning. Moreover, the statutes authorizing acquisition of land for open space establish separate administrative procedures designed to assure that a municipality's open space program reflects sound planning. One of those statutes establishes the Office of Green Acres, N.J.S.A. 13:8C-24(a)(1), which is required to adopt application procedures for grants and loans and develop criteria and policies for evaluating and ranking projects, N.J.S.A. 13:8C-24(b)(3)(a). The Green Acres Program has adopted detailed regulations that prescribe the information a municipality must supply in order to obtain such funding. N.J.A.C. 7:36-1.1 to -21.4. This information includes a recreation and open space inventory and a detailed description of the project for which the municipality seeks funding. N.J.A.C. 7:36-6.4. Before filing this action, Mount Laurel applied to the Green Acres Program for funding under these provisions and secured a $400,000 grant for acquisition of the Mipro site, which reflects a finding by the Green Acres Program that the Mipro site is suitable for open space acquisition. Therefore, we conclude that Mount Laurel's governing body had authority to condemn the Mipro site for open space even though the master plan did not then identify open space as a planned use in the area where it is located.[1]
*46 The Builders League also argues that Mount Laurel lacked authority to condemn the Mipro site because the governing body did not refer this proposed acquisition to the Planning Board in accordance with N.J.S.A. 40:55D-31. This section is part of Article IV of the MLUL, which authorizes a governing body to delegate authority to the planning board "to prepare a program of municipal capital improvement projects." N.J.S.A. 40:55D-29. However, the requirement that a governing body "refer the action involving such specific project to the planning board for review and recommendation in conjunction with [the] master plan" only applies if the governing body has authorized the planning board "to prepare a program of municipal capital improvement projects" in accordance with N.J.S.A. 40:55-29. Because there is no indication that Mount Laurel's governing body delegated such authority to the Planning Board, the governing body has authority to condemn the Mipro site without referring the proposed acquisition to the Planning Board for its review and recommendation under N.J.S.A. 40:55D-31.

II
We now turn to the primary issue presented by this appeal: whether an action to condemn property for open space may be maintained even if the condemnee can show that the municipality's motive in selecting particular properties for acquisition is to slow down residential development.
The New Jersey Constitution recognizes that private property may be condemned for "public use." N.J. Const. art. I, ¶ 20. The Eminent Domain Act, N.J.S.A. 20:3-1 to -50, establishes the procedures that govern eminent domain actions authorized by other statutory enactments, N.J.S.A. 20:3-6.
Our Legislature has long recognized that preservation of open space constitutes a public use, and therefore municipalities may utilize the eminent domain power to acquire property for this purpose. As early as 1917, the Legislature enacted the "Home Rule Act," L. 1917, c. 152, art. XXXVI, § 1, now codified in N.J.S.A. 40:61-1, which provides that a municipality may acquire property for "open spaces" by exercise of the power of "condemnation."
In the 1960s and 70s, the Legislature expressly recognized the public interest in acquisition of land for open space by enactment of the New Jersey Green Acres Land Acquisition Act of 1961, L. 1961, c. 45; N.J.S.A. 13:8A-1 to -18, the New Jersey Green Acres Land Acquisition Act of 1971, L. 1971, c. 419; N.J.S.A. 13:8A-19 to -34, and the New Jersey Green Acres Land Acquisition and Recreation Opportunities Act, L. 1975, c. 155; N.J.S.A. 13:8A-35 to -55. These statutes declare that it is in the public interest for the State and local governments to acquire additional land for "public recreation and the conservation of natural resources," N.J.S.A. 13:8A-2; N.J.S.A. 13:8A-20; N.J.S.A. 13:8A-36, and authorize the State to make loans or grants to municipalities to acquire property for these purposes, N.J.S.A. 13:8A-4; N.J.S.A. 13:8A-22; N.J.S.A. 13:8A-38. These statutes also provide that the power of eminent domain may be used to acquire land for recreation and conservation purposes. N.J.S.A. 13:8A-6; N.J.S.A. 13:8A-8; N.J.S.A. 13:8A-24; N.J.S.A. 13:8A-26; N.J.S.A. 13:8A-40; N.J.S.A. 13:8A-42.
In recent years, the Legislature has reaffirmed a municipality's statutory authority *47 to utilize the power of eminent domain to acquire land for open space and established new methods to generate the financial resources required for such acquisitions. In 1997, the Legislature enacted what is sometimes referred to as the Municipal Trust Fund Act, N.J.S.A. 40:12-15.1 to -15.9, which confers authority upon a municipality to submit a public referendum to the voters for approval of a tax levy for "acquisition of lands for recreation and conservation purposes." N.J.S.A. 40:12-15.7(a)(1)(a). This legislation states that "[r]ecreation and conservation purposes" includes "the use of lands for ... open space," and it specifically authorizes acquisition of land for this purpose by "condemnation," N.J.S.A. 40:12-15.1. Mount Laurel's residents have approved three referenda under this legislation authorizing tax levies for the acquisition of property for recreation and conservation purposes. Land Trust Alliance, supra, at 5-7.
In November 1998, the voters approved N.J. Const. art. VIII, § 2, ¶ 7, which dedicates funds from the State sales and use tax for acquisition and development of land for recreation and conservation purposes as well as farmland and historic preservation. Less than a year after adoption of this constitutional amendment, the Legislature enacted the Garden State Preservation Trust Act, N.J.S.A. 13:8C-1 to -42. This legislation contains legislative declarations that "there is growing public recognition that the quality of life, economic prosperity, and environmental quality in New Jersey are served by the protection and timely preservation of open space" and that "it is in the public interest to preserve as much open space ... as possible within the means provided by the 1998 constitutional amendment." N.J.S.A. 13:8C-2. The Garden State Preservation Trust Act creates a trust fund to assist "[l]ocal government unit[s]," which include municipalities, N.J.S.A. 13:8C-3, to acquire land for recreation and conservation purposes. N.J.S.A. 13:8C-27(a)(2)(a). In addition, this legislation expressly recognizes that the methods by which a municipality may acquire land thereunder include "eminent domain." N.J.S.A. 13:8C-3.
In short, there are multiple statutory enactments that confer authority upon municipalities to acquire land by eminent domain for preservation of open space and land conservation.

III
The next question is whether a municipality may exercise this authority even though it does not presently have a plan to devote the land to an active recreational use or, as Mipro poses the issue, even though Mount Laurel cannot demonstrate a "need" to acquire the particular parcel on which Mipro plans to construct a residential development.
The short answer is that the conservation of land for open space is a public use, even though the government agency acquiring the land has no plans to put the property to any active use. The Green Acres statutes recognize that the State and local governments may acquire land not only for "public recreation" but also "conservation of natural resources." N.J.S.A. 13:8A-2; N.J.S.A. 13:8A-20; N.J.S.A. 13:8A-36. The Municipal Trust Fund Act also authorizes municipalities to acquire land for both "recreation and conservation purposes," N.J.S.A. 40:12-15.2, and defines "conservation" to include "use of lands for ... open space," N.J.S.A. 40:12-15.1. Similarly, the Garden State Preservation Act declares that "it is in the public interest to preserve as much open space ... as possible," N.J.S.A. 13:8C-2 and authorizes the exercise of the power of eminent domain for this purpose, N.J.S.A. *48 13:8C-3. None of these statutory enactments include either an explicit or implicit requirement that a municipality have a plan for the active use of land acquired thereunder or be able to demonstrate a "need" for the acquisition. To the contrary, the manifest legislative intent in authorizing acquisition of land for "conservation" and "open space" is to authorize acquisition for use as passive open space. Thus, these statutory enactments recognize that open space acquisition may serve the public interest not only by setting aside land for potential future recreational uses but also by preventing development that may aggravate a municipality's traffic congestion and pollution problems and put additional strain on municipal services such as schools.
Our conclusion that a municipality has statutory authority to condemn land to preserve open public space, without any plan to put the land to active use, is supported by Dolan v. Borough of Tenafly, 75 N.J. 163, 380 A.2d 1119 (1977). In that case, one of the issues was whether a municipality's condemnation for use as open space of the last substantial area of vacant, residentially zoned land within its boundaries was contrary to Mount Laurel, supra, 67 N.J. 151, 336 A.2d 713. Dolan, supra, 75 N.J. at 169, 380 A.2d 1119. There was no indication that the municipality had a plan to put the land to any active use. Nevertheless, the Court rejected the argument that the acquisition would violate Mount Laurel, noting that it served the "vitally important public purpose[s]" of the 1971 and 1975 Green Acres statutes. Id. at 175, 380 A.2d 1119.
The trial court's conclusion that Mount Laurel can acquire the Mipro site for open space by negotiation with the owner but lacks authority to acquire the property by eminent domain is inconsistent with the statutes authorizing municipalities to acquire land for open space. These statutes all provide for voluntary acquisition or condemnation as alternative methods by which a municipality may obtain title to land for use as open space. N.J.S.A. 13:8A-6; N.J.S.A. 13:8A-24; N.J.S.A. 13:8A-40; N.J.S.A. 13:8C-3; N.J.S.A. 40:12-15.1. Furthermore, if these statutes were construed not to provide authorization for condemnation of land for open space, it would put the landowner in a position to dictate a purchase price far in excess of the property's fair market value. Therefore, the same public purposes that justify the use of public funds to acquire land for open space by voluntary acquisition also justify invocation of the power of eminent domain. Cf. Kelo v. City of New London, ___ U.S. ___, ___, 125 S.Ct. 2655, 2657, ___ L.Ed.2d ___, ___ (2005) (equating "public use" under the Fifth Amendment Takings Clause with a "public purpose").

IV
The trial court concluded that even though Mount Laurel's condemnation of the Mipro site was for the "facially valid purpose" of preserving the site "in perpetuity as ... passive open space," Mount Laurel was not authorized to condemn the site because the undisputed evidence showed that its motive in bringing this condemnation action was to prevent Mipro's proposed residential development. In reaching this conclusion, the court relied upon statements by the mayor and other public officials in urging Mount Laurel residents to vote for the public referenda authorizing special tax levies for open space acquisition.
"It is well-established that a reviewing court will not upset a municipality's decision to use its eminent domain power `in the absence of an affirmative showing of fraud, bad faith or manifest *49 abuse.'" Township of West Orange v. 769 Assocs., 172 N.J. 564, 571, 800 A.2d 86 (2002) (quoting City of Trenton v. Lenzner, 16 N.J. 465, 473, 109 A.2d 409 (1954), cert. denied, 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1955)). "Courts will generally not inquire into a public body's motive concerning the necessity of the taking...." Borough of Essex Fells v. Kessler Inst. for Rehab., Inc., 289 N.J.Super. 329, 337, 673 A.2d 856 (Law Div.1995). Whether a taking is for a public use "is largely a legislative question beyond the reach of judicial review except in the most egregious circumstances." See Township of West Orange v. 769 Assocs., supra, 172 N.J. at 576, 800 A.2d 86.
We conclude that even if the primary goal of Mount Laurel's open space acquisition program in general, and the condemnation of the Mipro site in particular, is to slow down residential development in the municipality, this does not provide a foundation for finding that the municipality's use of eminent domain for this purpose constitutes fraud, bad faith or manifest abuse. Mount Laurel had a reasonable basis for concern that additional residential development would aggravate traffic congestion and pollution problems in the municipality and impose added stress on its school system and other municipal services. Such concerns are reflected in this State's public policy "to halt suburban sprawl." Mount Olive Complex v. Township of Mount Olive, 340 N.J.Super. 511, 541, 774 A.2d 704 (App.Div.2001) remanded for reconsideration, 174 N.J. 359, 807 A.2d 192 (2002), decision reaffirmed, 356 N.J.Super. 500, 813 A.2d 581 (App.Div.), certif. denied, 176 N.J. 73, 819 A.2d 1189 (2003). The DEP recognized that Mount Laurel's acquisition of the Mipro site promotes this objective by approving a $400,000 grant for the acquisition. Moreover, although Mount Laurel's governing body has made a policy decision to focus in its open space acquisition program upon parcels that are likely to be the subject of residential development, the properties it acquires under the program nevertheless serve the public purpose of preserving open space.
Furthermore, Mount Laurel is not precluded from acquiring the Mipro site for open space simply because the developer performed site preparation work during the twenty-two-day period between the grant of final subdivision approval and the filing of the declaration of taking. We assume that once its right to acquire title is established, Mount Laurel will restore the site to its natural state.
This is not a case such as Kessler Institute, supra, 289 N.J.Super. 329, 673 A.2d 856, in which the court dismissed an action to condemn property on which the owner planned to construct medical rehabilitation and nursing facilities, or the unreported opinion of this court relied upon by respondents that affirmed dismissal of an action to condemn land on which the owner planned to construct a development that would have provided multi-family housing affordable to middle-income families. In those cases, the condemnees' proposed uses of their properties implicated significant public interests, and the courts found abuses of the eminent domain power in the municipalities' attempts to prevent those uses. If Mount Laurel had attempted to condemn Mipro's property when its predecessor in title planned to construct an assisted living facility on the site, a similar finding might have been warranted. However, Mipro's plan to construct a development of single-family homes that will be affordable only to upper-income families would not serve a comparable public interest.
Finally, we note that there is no indication that the Mipro site was treated differently *50 than other large tracts of vacant land on which residential developments were planned. Mount Laurel's acquisition of the Mipro site is simply one component of a broad-based municipal program for acquisition of additional open space, approved by Mount Laurel's residents in multiple public referenda, in which priority is given to acquisition of properties that are likely to be the subject of residential development. Thus, this is not a case in which a condemnation action ostensibly brought for a legitimate public purpose, such as acquisition of additional open space, was actually brought for a discriminatory reason or other improper motive. Therefore, this case is governed by the general rule that "[c]ourts will generally not inquire into a public body's motive concerning the necessity of the taking or the amount of property to be appropriated for public use." See Kessler Institute, supra, 289 N.J.Super. at 337, 673 A.2d 856. Applying this rule, there is no basis for a finding of abuse of the eminent domain power in Mount Laurel's condemnation of the Mipro site.
Accordingly, the final judgment dismissing Mount Laurel's complaint is reversed and the case is remanded to the trial court to appoint condemnation commissioners to value the property. Because the post-judgment order awarding Mipro counsel fees, costs and other expenses was based on the dismissal of this condemnation action, see N.J.S.A. 20:3-26(b), which we have determined Mount Laurel is entitled to maintain, that order also is reversed.
NOTES
[1] Because we reach this conclusion, we have no need to decide whether amendment of the master plan during the pendency of this action, which recognized that all land in Mount Laurel is "locationally suitable for open space," would permit maintenance of this action under the "time of decision" rule even if there were a requirement that land be designated in the master plan for use as open space before it can be acquired for this purpose. See Manalapan Realty, L.P. v. Township of Manalapan, 140 N.J. 366, 386, 658 A.2d 1230 (1995).