910 A.2d 617

MOUNT LAUREL TOWNSHIP, PLAINTIFF–RESPONDENT, v. MI-PRO HOMES, L.L.C., DEFENDANT–APPELLANT, AND LOR-RAINE C. ELBON AND 190 ELBO, L.L.C., DEFENDANTS, AND BUILDERS LEAGUE OF SOUTH JERSEY, INC., A NEW JER-SEY NON-PROFIT CORPORATION, DEFENDANT–INTERVE-NOR–APPELLANT.

Argued May 1, 2006—Decided December 7, 2006.

*Jeffrey I. Baron,* argued the cause for appellant (*Baron & Riefberg,* attorneys; *Mr. Baron* and *Barbara E. Riefberg,* on the briefs).

*Robert M. Washburn,* argued the cause for intervenor-appellant (*Flaster/Greenberg,* attorneys; *Mr. Washburn* and *Vincent J. Nolan, III,* of counsel and on the briefs).

*Michael L. Mouber,* argued the cause for respondent.

*Jeffrey N. Rabin,* Assistant County Solicitor, argued the cause for *amicus curiae* Board of Chosen Freeholders of the County of Burlington (*Evan H.C. Crook,* Burlington County Solicitor, attorney).

*Thomas W. Dunn,* argued the cause for *amici curiae* The New Jersey State League of Municipalities and New Jersey Institute of

Local Government Attorneys (*Beattie Padovano* and *William John Kearns, Jr.*, General Counsel attorneys).

*Rachel J. Horowitz*, Deputy Attorney General, submitted a brief on behalf of *amicus curiae* State of New Jersey (*Zulima V. Farber*, Attorney General of New Jersey, attorney; *Patrick DeAlmeida*, Assistant Attorney General, of counsel).

*Meryl A.G. Gonchar*, submitted a brief on behalf of *amicus curiae* New Jersey Builders Association (*Greenbaum, Rowe, Smith & Davis*, attorneys; *Mr. Gonchar, Dean A. Gaver* and *Steven Firkser*, of counsel and on the brief).

*Robert J. Assuncao*, submitted a brief on behalf of *amicus curiae* National Association of Home Builders (*DLA Piper Rudnick Gray Cary US*, attorneys).

PER CURIAM.

We affirm the holding of the Appellate Division for the reasons expressed by Judge Skillman in his thoughtful and well-written opinion. We recognize, as did the panel below, that the citizens of New Jersey have expressed a strong and sustained public interest in the acquisition and preservation of open space. The Appellate Division points to the numerous statutes enacted in the 1960s and 70s, and even more recently in the 1990s, authorizing loans and grants to expand the State's Green Acres Program. Most pertinent here, various of those statutes provide municipalities with the power of eminent domain to acquire land for recreation and conservation purposes. *Mt. Laurel Twp. v. MiPro Homes, L.L.C.*, 379 *N.J.Super.* 358, 371–72, 878 *A.*2d 38 (App.Div.2005) (citing New Jersey's Green Acres statutes, *N.J.S.A.* 13:8A–1 to –55, authorizing state and local governments to acquire land for recreation and conservation purposes). Even more telling, New Jersey residents have voted repeatedly for the issuance of state and county bonds to provide funding for open space acquisition.

That Mount Laurel Township sought to limit development, thereby to limit the overcrowded schools, traffic congestion and pollution that accompanies development, does not alter our dispo-

sition of this case. The town's motive is not inconsistent with the motive driving the public interest in open space acquisition generally. *See* N.J. Dep't of Envtl. Prot., *Smart Growth, at* http://www.state.nj.us/dep/antisprawl/ (last modified Nov. 14, 2005) (stating that New Jersey is "the nation's most densely populated state, and the most developed" and that "[i]ll-conceived land use and poorly designed development threatens our vital drinking-water supplies, devours our open space, spoils our landscape and creates traffic congestion that pollutes our air.").

Finally, we note that on remand and the appointment of condemnation commissioners, the property will be valued at its fair market value, including value associated with MiPro's final subdivision approval obtained twenty-two days before the filing of the declaration of taking. *Cf. State ex rel. Commissioner of Trans. v. Caoili*, 135 *N.J.* 252, 268, 639 *A.2d* 275 (1994) (stating that "potential subdivision is a highly material factor bearing on the optimum use of the property and its fair market value.").

Justice RIVERA–SOTO, dissenting.

I disagree with the majority's holding in two fundamental respects. First, I conclude, much as the trial court did, that this case presents an improper exercise of the power of eminent domain. Second, although the majority attempts to lighten the effect of its ruling by adding to the quantum of damages to which MiPro Homes, L.L.C. (MiPro) is entitled as a result of the condemnation proceedings instituted by Mount Laurel Township (Township), the majority simply does not go far enough. Therefore, I respectfully dissent.

## I.

### A.

Unlike the Appellate Division's broad conclusion that "a municipality's acquisition for open space of properties on which residential development is planned constitutes a proper use of the emi-

nent domain power[,]" *Mt. Laurel Twp. v. MiPro Homes, L.L.C.,* 379 *N.J.Super.* 358, 362, 878 *A.*2d 38 (App.Div.2005),[1] a conclusion embraced by the majority, *ante,* 188 *N.J.* at 533, 910 *A.*2d at 618, I subscribe to the analysis adopted by the trial court, which aptly concluded that "the condemnation here can best be described as a random taking without legal justification."

This case presents the unique and, in my view, egregious circumstance in which "the real purpose [of the condemnation] was to prevent yet another residential development in a township already under severe development pressure." In those particular circumstances, I must side with the trial court when it explained that "[i]f the Township desires to continue to purchase property for open space, it may do so. Those purchases may only be made from willing sellers, not by resort to condemnation of tracts under development from private owners unwilling to give up their properties and vested approvals."

We have long held that "[t]he exercise of [the power to condemn] will not be interfered with by the courts in the absence of fraud, bad faith or circumstances revealing arbitrary or capricious action." *Texas E. Transmission Corp. v. Wildlife Preserves, Inc.,* 48 *N.J.* 261, 269, 225 *A.*2d 130 (1966). As early as 1891, our predecessor court held that private property could not be taken via condemnation save upon "[a] fair sense ... said to be promotive of the welfare or convenience of the community...." *North Baptist Church v. City of Orange,* 54 *N.J.L.* 111, 113, 22 *A.* 1004 (Sup.Ct.1891) (citation and internal quotation marks omitted). Sixty years later, we clarified that "the decision of [a] condemnor is final *as long as it acts reasonably and in good faith." City of Newark v. N.J. Tpk. Auth.,* 7 *N.J.* 377, 385, 81 *A.*2d 705, *appeal dismissed,* 342 *U.S.* 874, 72 *S.Ct.* 168, 96 *L.Ed.* 657 (1951) (quoting 1 *Nichols, Eminent Domain* 383 (3rd. ed. 1950)) (emphasis sup-

---

[1] The Appellate Division refers to MiPro as "Mipro." However, MiPro's written submissions all capitalize the "p" in MiPro, and both the majority and I have adopted that convention.

plied). We ultimately described the standard to be applied thusly: "The exercise of [the power to condemn] will not be upset by the courts in the absence of an affirmative showing of fraud, bad faith or manifest abuse." *City of Trenton v. Lenzner,* 16 *N.J.* 465, 473, 109 *A.2d* 409 (1954), *cert. denied,* 348 *U.S.* 972, 75 *S.Ct.* 534, 99 *L.Ed.* 757 (1955).

When gauged through that prism, the Township's transparent after-the-fact explanations of its public policy basis for the condemnation of MiPro's property simply do not withstand serious scrutiny. That examination requires that I conclude, as the trial court inescapably did, that "the public purpose articulated for the taking of MiPro's property for passive open space was not based on a true public need but solely in response to the community's sentiment expressed at the polls, coupled with clear indications from township officials, that the property be acquired to stop residential development." Thus, to the extent the majority accepts the Appellate Division's reasoning and rejects the trial court's thoughtful analysis and conclusions, I respectfully dissent.

## B.

Furthermore, I reject the Appellate Division's value judgment in respect of the social worth of MiPro's development plans. According to the panel, the exercise of the Township's power of eminent domain would have been barred if MiPro's development had been for "medical rehabilitation and nursing facilities," or "multi-family housing affordable to middle-income families[,]" or even for MiPro's "predecessor in title['s] planned ... assisted living facility on the site[.]" *Mt. Laurel Twp. v. MiPro Homes, L.L.C., supra,* 379 *N.J.Super.* at 376–77, 878 *A.2d* 38. Having thus couched the issue presented, the Appellate Division condemned MiPro's development plan because its "development of single-family homes that will be affordable only to upper-income families would not serve a comparable public interest." *Id.* at 377, 878 *A.2d* 38. In my view, a judge's individualized and idiosyncratic view of what is or is not socially redeeming has no place in

determining whether the sovereign's exercise of the power of eminent domain is proper. The issue here was and remains whether the Township—and *not* MiPro—acted unreasonably, in bad faith, or in circumstances revealing arbitrary or capricious actions. Applying that yardstick, the trial court held—in my view, correctly—that the Township failed to meet its burden. I would not disturb that determination, least of all in the pursuit of some ill-defined social goal.

## II.

Even if the Township's condemnation efforts could be justified as a proper taking, I also disagree with the measure of damages the majority allows. According to the majority, "on remand and the appointment of condemnation commissioners, the property will be valued at its fair market value, including value associated with MiPro's final subdivision approval obtained twenty-two days before the filing of the declaration of taking." *Ante*, 188 *N.J.* at 534, 910 *A.*2d at 618 (2006). That measure of damages is, to me, woefully inadequate.

The relevant facts are past dispute: MiPro's property was zoned for residential use, precisely the use MiPro intended, and, hence, no variances were required; the only governmental approval MiPro sought—and validly secured—was a subdivision approval to subdivide one large lot into smaller, residential lots that nonetheless each still conformed to the requirements of the Township's zoning ordinance; the Township failed to amend its zoning ordinance to list MiPro's property as other than for residential use in anything even remotely close to a timely and fair manner; and, the Township's obvious purpose was not to increase open space for the use and enjoyment of its citizens, but plainly to forestall additional development and its concomitant additional demand on municipal facilities or services.

In that context, limiting the condemnee's recovery to the fair market value of his property, including any increase in the value resulting from the subdivision approval, denies the property owner

the basis of his bargain. MiPro purchased this property with the intent of developing a single-family housing development. MiPro acted on that intent, secured the required permits and commenced construction. Once MiPro secured its permits and acted in reliance thereon, MiPro's rights became vested. *See generally N.J.S.A.* 40:55D–49 (granting three-year non-disturbance period to major subdivision or site plan preliminary approval); *N.J.S.A.* 40:55D–52 (granting two-year non-disturbance period to zoning final approvals). It is obvious that MiPro engaged in this course of conduct for a reason: to profit from the development and sale of single-family residences.

Central to our system of justice is the concept that "[a]n injured person is entitled to be made whole." *Patusco v. Prince Macaroni, Inc.,* 50 *N.J.* 365, 368, 235 *A.2d* 465 (1967). In that same vein, "[t]he goal of compensatory damages is to restore the plaintiff to the same position it was in prior to the occurrence of the wrong." *Material Damage Adjustment Corp. v. Open MRI of Fairview,* 352 *N.J.Super.* 216, 232, 799 *A.2d* 731 (Law Div.2002). Those core principles lead to but one fair and equitable conclusion: that, unless the Township can demonstrate that MiPro was unable or unwilling to complete that development, the proper quantum of damages arising from this taking is the aggregate of MiPro's restitution damages [2] and expectancy damages.[3] Anything less

---

[2] Those include MiPro's development costs to date, including acquisition costs. *See Material Damage Adjustment Corp. v. Open MRI of Fairview, supra,* 352 *N.J.Super.* at 232, 799 *A.2d* 731 (defining restitution as "an award of compensatory damages [that] requires the full restoration or 'restitution' to plaintiff of all payments made"); *Black's Law Dictionary* 1315 (7th ed. 1999) (defining restitution as "[c]ompensation or reparation for the loss caused to another").

[3] Those include the profit MiPro could reasonably have been expected to reap as a result of this development project. *See Furst v. Einstein Moomjy, Inc.,* 182 *N.J.* 1, 14, 860 *A.2d* 435 (2004) (defining "expectation interest" as "the benefit of the bargain"); *Sons of Thunder, Inc. v. Borden, Inc.,* 285 *N.J.Super.* 27, 104, 666 *A.2d* 549 (App.Div.1995), *rev'd on other grounds,* 148 *N.J.* 396, 690 *A.2d* 575 (1997); *Noye v. Hoffmann–La Roche, Inc.,* 238 *N.J.Super.* 430, 437, 570 *A.2d* 12 (App.Div.), *certif. denied,* 122 *N.J.* 146, 147, 584 *A.2d* 218 (1990).

takes from MiPro a property right without just compensation, something prohibited by our Constitution, *N.J. Const.* art. I, ¶ 20 ("Private property shall not be taken for public use without just compensation."), and a concept embodied in the Eminent Domain Act of 1971. *N.J.S.A.* 20:3–29 ("The condemnee shall be entitled to compensation for the property, and damages, if any, to any remaining property, together with such additional compensation as provided for herein, or as may be fixed according to law.").

Therefore, because the quantum of damages allowed by the majority on remand artificially deflates the value of MiPro's property, I respectfully dissent.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—6.

*For reversal*—Justice RIVERA-SOTO—1.