899 A.2d 327

IN RE PETITION FOR SUBSTANTIVE CERTIFICATION OF BOROUGH OF MONTVALE.

Superior Court of New Jersey
Appellate Division

Argued May 16, 2006—Decided June 8, 2006.

120

Before Judges COBURN, LISA and S.L. REISNER.

*Jeffrey Kantowitz* argued the cause for appellant Reno A. Del Ben (*Goldberg, Mufson & Spar,* attorneys; *Mr. Kantowitz,* of counsel and on the brief).

*Russell R. Huntington* argued the cause for respondent Borough of Montvale (*Huntington Bailey,* attorneys; *Mr. Huntington,* of counsel and on the brief; *Siobhan Spillane Bailey,* on the brief).

*George N. Cohen,* Deputy Attorney General, argued the cause for respondent New Jersey Council on Affordable Housing (*Zulima V. Farber,* Attorney General, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Pamela E. Gellert,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

S.L. REISNER, J.A.D.

Reno Del Ben appeals from a final order of the New Jersey Council on Affordable Housing (COAH) approving the Borough of Montvale's petition for second round substantive certification of its fair share housing plan. We affirm.

I

We begin by reviewing the regulatory scheme at issue, followed by a review of the most pertinent facts.

The Fair Housing Act, *N.J.S.A.* 52:27D–301 to –329(FHA), created COAH to implement the *Mount Laurel* doctrine.[1]  *Toll*

---

[1] *S. Burlington County NAACP v. Mount Laurel Twp.,* 67 *N.J.* 151, 336 *A.2d* 713, *cert. denied,* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.2d* 28 (1975) (*Mount Laurel*

*Bros., Inc. v. Twp. of W. Windsor,* 173 *N.J.* 502, 513, 803 *A.*2d 53 (2002). The Legislature directed COAH to adopt criteria and guidelines for adjusting a municipality's fair share if there is a lack of vacant and developable land within the municipality. *N.J.S.A.* 52:27D–307(c)(2)(f). COAH's second-round regulations implemented the Legislature's directive by creating the concept of realistic development potential (RDP). *N.J.A.C.* 5:93–4.1. *See Fair Share Hous. Ctr., Inc. v. Twp. of Cherry Hill,* 173 *N.J.* 393, 412–13, 802 *A.*2d 512 (2002) (summarizing the RDP methodology). Assuming that a municipality's RDP is less than its pre-credited need minus the rehabilitation component, as is the case here, the municipality must include in its fair share plan a method of satisfying its entire fair share should additional land become available. *N.J.A.C.* 5:93–4.1(b); *N.J.A.C.* 5:93–4.2. Specifically, a municipality must identify potential sites for development, and a method to generate additional affordable units should those sites become available. *N.J.A.C.* 5:93–4.2. A municipality is entitled to substantive certification if it devises a fair share plan that meets its RDP and complies with COAH regulations for satisfying its unmet need. *See N.J.S.A.* 52:27D–314(a).

The Borough was a defendant in an exclusionary zoning suit instituted in 1989. The litigation resulted in a judgment of compliance and order of repose entered by the Law Division on December 16, 1994. The court determined that the Borough's RDP was 146 affordable units, and that its housing element and fair share plan created a realistic opportunity to meet its RDP. The judgment expired on December 15, 2000.

Del Ben owns a forty-five-acre tract that is the largest vacant parcel in the Borough. The judgment of compliance included a thirty-two-acre parcel of Del Ben's land as an inclusionary zoning site that could yield 195 units and thirty-nine affordable units. The remaining thirteen-acre parcel was zoned R–40, single-family

*I* ); *S. Burlington County NAACP v. Mount Laurel Twp.,* 92 *N.J.* 158, 456 *A.*2d 390 (1983) (*Mount Laurel II* ).

residential, in anticipation of its acquisition by the Borough for park land. However, the Borough did not initially pursue acquisition of the thirteen-acre tract.

The Borough's second-cycle cumulative fair share is 255 affordable units, all new construction; the Borough has no indigenous need. In June 2000, the Borough petitioned for substantive certification of its second-round fair share plan. Once again, Del Ben's thirty-two acres were zoned for an inclusionary development that would yield thirty-nine affordable units. There were ten objectors to the fair share plan. Del Ben, who was then not represented by counsel, filed objections contending that all forty-five acres of his property should be zoned at a density of seventeen units per acre. He also alleged that the Borough's zoning ordinance applicable to the thirty-two acres zoned for inclusionary development contained many cost-generating features, such as excessive regulations dealing with setback, yard and bulk requirements, height and length of buildings, maximum lot coverage and buffer and open space areas.

During statutorily-required COAH mediation, all parties agreed that COAH should recalculate the Borough's RDP. In most cases, COAH honors the RDP established in prior court settlements, but in this case the Borough did not acquire certain land for open space, as it had indicated it would do in securing the judgment of compliance.

In May 2001, COAH inspectors evaluated each parcel of vacant land in the Borough and in August 2001, they issued a comprehensive report (RDP report) reevaluating the amount of vacant land in the Borough that could be utilized for affordable housing. COAH included Del Ben's entire forty-five acre tract in calculating the Borough's RDP and concluded that the Borough had an RDP of 187 affordable units, subsequently increased to 188 units. Del Ben retained a professional planner, P. David Zimmerman, who submitted a report opining that the Borough could meet its entire unmet need by rezoning Del Ben's forty-five acres at a density of approximately fourteen units per acre, which would yield a total of

630 units and 126 affordable units. On November 26, 2001, COAH issued a detailed response to comments on the RDP report. COAH responded to Zimmerman's comments by observing that the RDP "report was not directed at unmet need. Discussions concerning the suitability and/or availability of a site to address unmet need may be a topic to discuss during mediation with Montvale."

The COAH mediation continued throughout 2002. COAH's March 17, 2003, mediation report concluded that the Borough must amend its housing element and fair share plan to address its 188–unit RDP and its 67–unit unmet need. The report rejected Del Ben's contention that the ordinance contained cost-generating features. It stated: "Design and bulk standards in this zone are identical to other zones in Montvale that have been successfully developed with affordable housing and would therefore appear not to present any cost-generative impediments." The report indicated that the Borough had agreed to allow Del Ben the option of making a payment in lieu of constructing thirty-nine affordable units. "However, the objector's contention that his site should be zoned to accommodate a density greater than six units per acre is a contested issue of fact. With no resolution to this objection arising during mediation, it is recommended ... that this objection be transferred" to the OAL.

In June 2003, the Borough submitted a new housing element and fair share plan, which again included Del Ben's thirty-two-acre site in the zone for inclusionary development. Shortly thereafter, the Borough re-petitioned for substantive certification. Again there were several objectors, including Del Ben. In August and September 2003, he reiterated his objections to the fair share plan.

COAH's pre-mediation report of July 21, 2004, concluded that, subject to additional information, the Borough proposed four units more than its 255–unit fair share through zoning for new construction for 211 units that would go toward the Borough's 188–unit RDP, and an additional forty-eight units toward its unmet need.

The report summarized Del Ben's objections as follows: (1) his property was suitable for a density of at least fourteen units per acre; (2) his thirteen-acre tract should be zoned for affordable housing; (3) a site designated for overlay zoning (the De Piero site) should not be considered for overlay zoning because the owners had indicated that they intended to farm the property for the next two generations; (4) the ordinance had a number of cost-generating features.

Three mediation sessions were held between July 29, 2004, and August 23, 2004. COAH's November 24, 2004, mediation report summarizes Del Ben's objections and COAH's responses as follows:

*Objection:*

As stated in a report dated September 13, 2001 prepared by David Zimmerman, PP/AICP, the Del Ben site is suitable for a much greater density, i.e. a density of at least 14 units per gross acre.

*Mediation Result:*

The Del Ben site was zoned at six units per acre as part of Montvale's judgment of compliance and the zoning remains unchanged. The Borough has zoned the property for up to six units per acre and incorporates this zoning in a plan that provides 235 units against its 188–unit RDP.

*Objection:*

All of the Del Ben site zoned one acre residential, which the municipality failed to acquire, should be available for affordable housing.

*Mediation Result:*

Montvale has received Green Acres funding and Bergen County Open Space funding to acquire the property. Negotiations have ensued and Montvale antici-pates acquiring the property within one year.

*Objection:*

The De Piero site does not create a realistic opportunity as an overlay site for 32 affordable units, as the owners have indicated they expect to farm this property for at least the next two generations.

*Mediation Result:*

The De Piero site has been included in Montvale's plan as a site to address the Borough's unmet need. COAH's rules do not require that sites addressing unmet need be constructed during the period of substantive certification.

*Objection:*

A number of cost generation features of the Montvale zoning ordinances should be eliminated or made inapplicable to affordable housing sites, prior to the grant of substantive certification, i.e. requirements regarding trees 4″ or more, regulation of

[setbacks], yard and bulk requirements and distribution of buildings, two-story height restrictions on affordable units, regulations limiting the maximum length of affordable housing unit buildings, regulations specifying the minimum distances between affordable housing buildings, regulations specifying the maximum lot coverage of affordable housing buildings and regulations dealing with buffer areas and open space areas and steep slopes ordinance.

*Mediation Result:*

Montvale submits that no cost-generating features have in any way impaired the builder to construct low- and moderate-income housing. Montvale further submits that it is in conformance with COAH's rules and regulations with respect to cost-generating features. The majority of zoning ordinances implemented were crafted as a result of development agreements entered into between the Borough of Montvale and developers who would have raised objections to the extent that it would have inhibited development of low- and moderate-income housing. This has never occurred. With respect to the Del Ben site, the zoning is a result of a court approved settlement in 1994.

COAH issued its compliance report on November 25, 2004. By that time, the Borough had proposed a plan that, with requested waivers, would result in the construction of 243 units toward the Borough's RDP of 188 units. In addition, the Borough had created an overlay zone for the De Piero site which would yield, if developed, thirty-two additional affordable units. Thus, the fair share plan proposed 275 affordable units, twenty units in excess of the Borough's fair share. The De Pieros consented in writing to having their property placed in an overlay zone for inclusionary development at a density of eight units per acre. Finally, the compliance report noted that Del Ben's site would be impacted by the 300–foot buffer requirements in newly-adopted DEP stormwater regulations, *N.J.A.C.* 7:8–5.5(h), but that the municipal engineer had determined that there were enough upland areas available to construct a 195–unit inclusionary development. The report concluded that the Borough had submitted a compliant plan.

By letters dated December 8, 2004, Del Ben objected to the compliance report and the mediation report. He contended that there were factual disputes as to (1) whether his site could support a density of fourteen units per acre, (2) whether the remaining thirteen-acre parcel should also be zoned for inclusionary development, (3) whether the ordinance had a number of cost-generating features, (4) whether the new DEP stormwater regulations, combined with cost-generating bulk requirements, made it impractical

to construct a 195–unit inclusionary development, and (5) whether the new stormwater regulations might impact the De Piero property. Del Ben objected to the Borough's deletion of the payment-in-lieu option at COAH's recommendation. He contended that, by suggesting deletion of the payment-in-lieu option, COAH failed to act as a neutral mediator. His objection to the mediation report argued that a hearing was necessary to resolve these issues.

On December 8, 2004, the Borough filed a response to the mediation report. The Borough argued that it complied with COAH regulations by retaining the zoning on Del Ben's thirty-two acres at six units per acre, and that the Borough need not rezone the thirteen-acre parcel for affordable housing since its fair share plan more than satisfied its fair share. Moreover, Del Ben's objections to the alleged cost-generating features of the ordinance were unsupported, because other developers had successfully built inclusionary developments under the same bulk standards.

On December 9, 2004, COAH issued a response to comments on the mediation report. First, COAH concluded it was immaterial whether the thirty-two-acre tract could support a density of fourteen units per acre. The Borough had consistently zoned the parcel for a density of six units per acre and had presented a plan that created a realistic opportunity for the construction of more than its fair share. Since the Borough had submitted a compliant plan it had the discretion to "determine the means whereby its affordable housing obligation is to be satisfied." Second, there was no need to rezone Del Ben's thirteen-acre tract, since the Borough had received Green Acres funding and Bergen County Open Space funding to acquire the property and because the Borough "has addressed its RDP of 188 units and if granted substantive certification, has the potential to address its entire unmet need with a 20–unit surplus." Third, at no time during mediation or thereafter did Del Ben submit specific facts to support his contention that the ordinance contained cost-generating features. Moreover, Del Ben "should note that once a development application is filed with the municipality, he is entitled to seek relief under *N.J.A.C.* 5:93–10.4, should issues arise with

respect to his property."[2]  The mediation response determined that Del Ben's claim regarding the impact of the new stormwater regulations was not raised during mediation, and was therefore outside the scope of the report.

COAH's December 10, 2004 response to comments on the compliance report did address the impact of the new stormwater regulations.  It stated:

> After reviewing reports available, including the 1990 environmental analysis of Thonet Associates and the wetland delineation of Louis A. Raimondi, PE, reviewing the COAH staff GIS analysis of the property, conferring with staff in the New Jersey Department of Environmental Protection Land Use Section, regarding the Category 1 stormwater regulations and securing an assessment from Montvale's municipal engineer, COAH staff concluded that it is a reasonable assumption, based on the information available at this time, that this development, as proposed at six units per acre in accordance with the zoning regulations, may be considered approvable, available, developable and suitable in accordance with COAH regulations.

The compliance report also addressed Del Ben's objection to eliminating the payment-in-lieu option, stating:

> Elimination of the payment in lieu provision is necessary in order for the Montvale Fair Share Plan to be compliant with COAH's regulations and the Fair Housing Act which both restrict the maximum number of units that may be transferred via an RCA. Furthermore, permitting additional RCA units would reduce the number of age-restricted units eligible to be included in the Borough's plan.

Finally, a member of COAH's staff prepared an executive summary which recommended that COAH grant certain waivers, and if those waivers were granted the Borough would have a fair share plan that would create a realistic opportunity for the creation of 243 affordable units against its RDP of 188 units, and overlay zoning for another thirty-two units, which could result in a twenty-unit surplus.[3]

---

[2] That regulation allows inclusionary developers to request COAH mediation and COAH assistance in determining the standards that apply to a specific development and to expedite municipal review of an application for development.

[3] The executive summary is dated December 15, 2004.  COAH asserts that the date is inaccurate and that the executive summary was prepared before December 10, 2004.

COAH reviewed the mediation report and the compliance report at its meeting on December 15, 2004. Del Ben did not appear at the meeting. COAH voted to approve the petition and the resolution granting substantive certification was issued that same day.

## II

On this appeal, Del Ben raises the following issues:

POINT I: COAH'S GRANT OF SUBSTANTIVE CERTIFICATION TO THE BOROUGH OF MONTVALE WAS ARBITRARY, CAPRICIOUS, UNREASONABLE, AND CONSTITUTED AN ABUSE OF THE AGENCY'S AUTHORITY AND DISCRETION BECAUSE COAH ERRONEOUSLY FAILED TO ABIDE BY ITS OWN REGULATIONS, FAILED TO AFFORD OBJECTOR–APPELLANT DEL BEN DUE PROCESS AND FUNDAMENTAL FAIRNESS IN COAH'S ADMINISTRATIVE PROCESS, AND UNJUSTIFIABLY REACHED CONCLUSIONS UNSUPPORTED BY THE ADMINISTRATIVE RECORD.

A. COAH Refused to Find Contested Issues of Material Fact.

B. COAH's Conduct Undermined the Administrative Process.

C. COAH Improperly Treated Del Ben's Property.

Having reviewed the record, we conclude that COAH's decision is supported by substantial credible evidence and is not arbitrary or capricious, and that except as discussed below, Del Ben's arguments are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(A) and (E); *see In re Twp. of Warren*, 132 *N.J.* 1, 26, 622 *A.*2d 1257 (1993).

Relying on *Hills Development v. Bernards Township*, 229 *N.J.Super.* 318, 551 *A.*2d 547 (App.Div.1988), Del Ben contends that he was entitled to an OAL hearing on whether DEP stormwater regulations, *N.J.A.C.* 7:8–1.1 to –6.3, would reduce his ability to develop his property. *See In re Stormwater Mgmt. Rules*, 384 *N.J.Super.* 451, 458–59, 894 *A.*2d 1241 (App.Div.2006). But we conclude that *Hills Development* is not on point. While we remanded to COAH for an administrative hearing in that case, we did so because the objector had presented evidence that raised material issues of fact. There, in addition to their own conclusory statements, the objectors had submitted the report of a professional planner, which raised environmental and other specific

issues concerning the property chosen as the site of the affordable housing. *Hills Dev., supra,* 229 *N.J.Super.* at 340, 551 *A.*2d 547. "Thus appellants ... satisfied the threshold requirements for a plenary hearing." *Ibid.*

In this case, Del Ben provided absolutely nothing, beyond his own general statements, unsupported by an expert report or other legally competent evidence. COAH has "authority to determine whether a case is contested." *Id.* at 341, 551 *A.*2d 547; *Quad Enters. v. Borough of Paramus,* 250 *N.J.Super.* 256, 263, 593 *A.*2d 1227 (App.Div.1991). In this case, where the objector failed to raise the issue of the DEP regulations during mediation, and where he failed to support his objections to the compliance report with any competent evidence, the agency properly denied an OAL hearing.

Further, while we do not condone an ex parte e-mail correspondence between COAH and the Borough Engineer concerning the impact of DEP stormwater regulations, *see High Horizons Dev. Co. v. Dep't of Transp.,* 120 *N.J.* 40, 53, 575 *A.*2d 1360 (1990), we do not find grounds to remand for further proceedings as Del Ben urges us to do. The Borough Engineer's report to COAH is quite brief. It indicates only that he "reviewed the NJDEP I-map as well as our own records" in assessing the impact of the new DEP regulations on various properties. Based on this review, he asserted that the Del Ben property contains enough upland area to accommodate the proposed housing units notwithstanding the new DEP storm water regulations. His report was accurately summarized in the COAH compliance report, and Del Ben had an opportunity to respond to it. If Del Ben thought he needed to see the report in order to respond to it, he could have requested a copy; he did not.

We also find his reliance on *In re Township of Southampton,* 338 *N.J.Super.* 103, 768 *A.*2d 233 (App.Div.), *certif. denied,* 169 *N.J.* 610, 782 *A.*2d 428 (2001), to be misplaced. In *Southampton* the issue was "whether COAH is required to consider information which indicates that a municipality's compliance plan does not

comply with COAH's regulations and does not provide a realistic opportunity for satisfaction of the municipality's affordable housing obligation, if the information is provided by a party who failed to file a timely objection to the plan." *Id.* at 105–06, 768 *A.2d* 233. In *Southampton,* the objector's information was indeed submitted late, but it included "a memorandum prepared by [the objector's] planner, which stated that photo-infrared mapping of the area by the Department of Environmental Protection (DEP) showed only 40.6 acres of upland and that '[w]hen the wetlands, buffer and non-developable lands are excluded ... [,] developable land is only 27.1 acres.' " *Id.* at 108–09, 768 *A.2d* 233.

Also, in *Southampton* the municipality repeatedly included property in its plan that not only had no public water or sewer service but as to which "there were no plans for extending those services to the area." *Id.* at 109, 768 *A.2d* 233. After COAH approved the plan, the objector filed a motion for reconsideration, again supported by an expert report providing specific evidence that another of the proposed affordable housing sites was unsuitable for development. *Id.* at 109–110, 768 *A.2d* 233. The municipality responded with a contesting expert report, and the objector replied with a further expert report adding more specific evidence. *Id.* at 110–11, 768 *A.2d* 233.

While conceding that it would have considered the objector's reports if they were submitted timely, COAH rejected the reconsideration motion as untimely. COAH also relied on unsupported, self-serving statements by one of the property owners that "the zoning in the RR–1 zone is realistic." *Id.* at 111, 768 *A.2d* 233. We concluded that COAH erred because

> the factual materials [the objector] submitted to COAH raise serious questions as to whether Southampton's compliance plan conforms with COAH regulations and provides a realistic opportunity for the construction of affordable housing, and that COAH failed to give adequate consideration to those materials.
>
> [*Id.* at 112, 768 *A.2d* 233.]

In that context, we emphasized that COAH could not turn a blind eye to evidence of potential environmental impediments to development and that the agency should consult "with other

agencies, such as the Department of Environmental Protection and State Planning Commission, to determine whether construction of high density housing on the sites would conflict with the regulatory policies those agencies are charged with implementing." *Id.* at 114, 768 *A*.2d 233. We did not hold that COAH was required to hold an evidentiary hearing based on unsupported, self-serving statements by an interested property owner.

In this case, Del Ben did not submit legally competent evidence, or indeed, any evidence, to support his position that the DEP rules would prevent development of his property at the designated density of six units per acre. And, as required by *Southampton,* COAH staff did make further inquiry of the municipality, through its Borough Engineer, and consulted with the DEP before responding to Del Ben's comments. In fact, the COAH response indicates that COAH staff did more:

> After reviewing reports available, including the 1990 environmental analysis of Thonet Associates and the wetland delineation of Louis A. Raimondi, PE, reviewing the COAH staff GIS analysis of the property, conferring with staff in the [DEP] Land Use Section, regarding the Category 1 stormwater regulations and securing an assessment from Montvale's municipal engineer, COAH staff concluded that it is a reasonable assumption, based on the information available at this time, that [the Del Ben] development, as proposed at six units per acre in accordance with the zoning regulations, may be considered approvable, available, developable and suitable in accordance with COAH regulations.

Under *Southampton,* COAH was required to acknowledge and investigate the issue of the possible impact of the DEP regulations on Del Ben's property, and it did so.[4] But it is reasonable that the agency's investigation be in proportion to the apparent magnitude of the problems brought to its attention; otherwise the agency's investigation would never be completed. We agree that some further description of the communication from DEP would have been helpful in understanding COAH's conclusion. But in light of

---

[4] Del Ben's own expert, P. David Zimmerman, acknowledged in his September 13, 2001 report in support of a higher density zoning on the property, that COAH's staff had conducted its own wetlands calculations and had also considered a wetlands delineation performed by Raimondi Associates in concluding that the land could support eight-unit per acre zoning.

the complete absence of evidence from Del Ben to support his position, what COAH did here was sufficient. Far from ignoring a potential problem the way the agency did in *Southampton,* the agency here questioned the municipal engineer, consulted available expert reports and a wetland delineation, and consulted with DEP. On this record, an OAL hearing was not required.[5]

█ Finally, we find no merit in Del Ben's objection to the amendment of the zoning ordinance to remove the "payment in lieu" option. While this option is a permissible approach, it is not one the Borough or COAH is required to employ. The Borough was free to determine how best to meet its fair share obligation. *See Hills Dev. Co. v. Bernards Twp.,* 103 *N.J.* 1, 22, 510 *A.*2d 621 (1986); *N.J.S.A.* 52:27D–311(a). It was not required to continue an approach that would give Del Ben the benefit of higher density zoning without the obligation to actually build affordable housing on his property. Moreover, as recited in COAH's November 25, 2004 Compliance Report, there were rational reasons for the Borough to eliminate this option, since it could potentially require the Borough to obtain additional approvals and "reduce the number of age-restricted units for which Montvale may claim credit."

█ We likewise reject Del Ben's argument that the Borough should have zoned his property for higher density based on his expert's opinion that the property could be zoned for fourteen units per acre. Again, the Borough had discretion as to how to meet its fair share obligation; it was not required to accept Del Ben's proposed approach. *N.J.S.A.* 52:27D–311(a). Since the Borough had met its fair share requirement by other means, there was no need to hold an OAL hearing on whether it would be possible to zone Del Ben's property for fourteen units per acre.

---

[5] We also note COAH's concession at oral argument, as also noted in its December 10, 2004 response to comments, that if Del Ben seeks DEP approval to develop his property and is unable to obtain those approvals due to the impact of the storm water regulations, he may seek reconsideration from COAH of its approval of the Borough's fair share plan. We imply no view as to the outcome of such a reconsideration application.

*Mount Laurel Township v. Mipro Homes,* 379 *N.J.Super.* 358, 878 *A.*2d 38 (App.Div.2005), *certif. granted,* 186 *N.J.* 241, 892 *A.*2d 1288 (2006), is not on point either. In that case, in dicta, we suggested that we might disapprove a town's use of eminent domain to condemn for open space property on which its owner planned to build an assisted living facility. *Id.* at 376–77, 878 *A.*2d 38. Here, although the Borough plans to acquire some of Del Ben's property, other than the parcel already zoned for affordable housing, the Borough has also submitted a satisfactory plan to meet its fair share obligation. Therefore, no implication arises that its planned acquisition is a ruse to avoid meeting its fair share obligation.

Affirmed.